| | |
|---|---|
| 1 | MICHAEL S. LAWSON (SBN 048172)<br>City Attorney |
| 2 | JUSTIN NISHIOKA (SBN 278207)<br>Deputy City Attorney |
| 3 | CITY OF HAYWARD<br>777 B Street, 4th Floor |
| 4 | Hayward, CA 94541-5007<br>Tel: (510) 583-4458 |
| 5 | Fax: (510) 583-3660 |
| 6 | Attorneys for Defendants City of Hayward, |
| 7 | CSO Jonanthan Colton, CSO Tina Mills,<br>Officer Antwan Nguyen, and CSO Gail Eakin. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND COURTHOUSE

| TERRI ADAMS, | Case No. C 14-5482 (KAW) |
|---|---|
| Plaintiff,<br>v.<br>CITY OF HAYWARD, a municipal corporation; OFFICER ANTWAN NGUYEN, individually and in his official capacity as a police officer for the City of Hayward; COMMUNITY SERVICES OFFICER GAIL EAKIN, individually and in her capacity as a police officer for the City of Hayward; COMMUNITY SERVICES OFFICER TINA MILLS, individually and in her capacity as a police officer for the City of Hayward; and COMMUNITY SERVICES OFFICER, JONATHAN COLTON, individually and in his capacity as a community service officer for the City of Hayward,<br>Defendants. | **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**<br><br>Hearing Date: October 1, 2015<br>Time: 11a.m.<br>Courtroom: 4, 3rd Floor<br>1301 Clay Street<br>Oakland, CA 94612<br><br>Assigned to the Honorable Kandis Westmore |

Defendants the City of Hayward, Officer Antwan Ngyuyen, Community Services Officer Gail Eakin, Community Services Officer Tina Mills, and Community Services Officer Jonathan Colton (collectively "Defendants" or the "City") hereby present their Reply to Plaintiff's Opposition to the City's Motion for Summary Judgment as follows:

# INTRODUCTION

Based on the arguments presented in Plaintiff's Opposition to the City's Motion for Summary Judgment ("Opposition"), this court must grant the City's Motion for Summary Judgment. Plaintiff's principal argument is that the City has failed to authenticate the videos appendant to its Motion for Summary Judgment ("Motion"). Here in this Reply to Plaintiff's Opposition to the City's Motion for Summary Judgment ("Reply"), the City dispels any doubts as to the authenticity of the videos. Attached is a declaration of Justin Nishioka providing authentication. Additional authentication is provided below. Authentication is based on Federal Rule of Evidence 901(b)(4) ('Distinctive Characteristics and the Like') and Federal Rule of Evidence 901(b)(7) ('Evidence About Public Records'), and is further based on Plaintiff's authentication of the videos.

The videos capture the issues under dispute. Plaintiff's allegations of misconduct were identified by Plaintiff in her deposition. While in her deposition, Ms. Adams pointed out where on the videos the alleged misconduct occurred. Thus, there is no dispute that the videos capture the events giving rise to Plaintiff's Complaint. All other arguments made in Plaintiff's Opposition, such as whether Plaintiff "requested" to go to the ground or apologized to CSO Eakin, are not material issues of dispute and need not be considered by this Court in determining whether to grant the City's Motion. The court needs only to focus on the material issues of this case.

Plaintiff's Opposition fails to provide any material issue of dispute or any showing that the actions of the defendant offers were objectively unreasonable. At no point does Plaintiff present evidence that the City was plainly incompetent in its handling of Ms. Adams. The City objects to the Plaintiff's non-certified copies of CSO Mills and CSO Eakin's deposition transcripts, as well as objects to the disclosure of the Hayward Police Department Policy Manual, submitted as Exhibit F to Plaintiff's Opposition, which is confidential and subject to the stipulated Protective Order (Docket No. 48) and should have been filed under seal. Still, these documents in no way bolster the Plaintiff's arguments.

Let's get to it. The City begins by providing additional authentication of the videos.

# ARUGUMENT

## I. Authentication of the Videos

It appears to be the Plaintiff's principal argument that the videos are not authentic. Let us be clear- the videos are already part of the record. Plaintiff has herself provided the court with links to the videos in her Complaint. (Docket No. 29, p. 5, lines 7-15). Now these records which Plaintiff provided as support for her Complaint are now being challenged. Attached to this Reply is a declaration from Justin Nishioka which authenticates the videos (*See* Declaration of Justin Nishioka), and discussed below, the City provides statutory authentication of the videos.

A party asserting that a fact cannot be disputed must support the assertion by citing to particular materials of record, including depositions, documents, and electronically stored information. Fed. Rule §56(c)(1). To satisfy the requirement of authenticating an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Fed. R. Evid. §901(a). Evidence that satisfies this requirement is evidence that has distinctive characteristics, whereby the appearance, contents, substance, and other distinctive characteristics of the item, taken together with all the circumstances, shows the items authenticity. Fed. R. Evid. §901(b)(4). In its Motion for Summary Judgment, attached as Exhibits 1, 2, and 3 to the Declaration of Justin Nishioka appendant to that Motion, the City provided videos capturing the incidents giving rise to Plaintiff's complaint. The time signatures and locations of the videos match the time and location of the incident. Ms. Adams appears in the videos and identifies herself in the videos. (*See generally*, Deposition Transcript of Terri Adams ("Adams Transcript"), Exhibit 3 to the Declaration of Justin Nishioka). The videos have distinct characteristics whereby this court can rely on the authenticity of the records.

The videos are also authenticated since they are public records. Documents recorded in a public office as authorized by law, or purported public records from the office where items of this kind are kept, satisfy the requirements of authentication. Fed. R. Evid. §901(b)(7). The documents here are public records held by the City of Hayward and the County of Alameda and are authorized by law and regularly kept by those entities. (*See* Declaration of Justin Nishioka, Exhibits 1 and 2).

Thus, the videos offered in the City's Motion for Summary Judgment are authentic and can be used as evidence to support granting the City's Motion.

## II. Plaintiff's Authentication of the Videos

In the Plaintiff's Deposition, Ms. Adams claimed that the videos were an accurate record of the events giving rise to her Complaint. More than just referring to the videos, Ms. Adams relied on the videos for accuracy, and on numerous occasions asked that the City play the videos to refresh her memory or to assist in providing details as to what occurred. Every statement presented below is a statement that Ms. Adams made in direct reference to the videos shown during her deposition. As you will see, Plaintiff has authenticated the videos and attested to the accuracy of the contents of the videos. In Ms. Adams' deposition, she stated the following:

<u>Referring to the Sally Port Video</u>

1. "I'm taking a beating right now at this point in the video." (*See* Adams Deposition Transcript, Exhibit 3 to the Declaration of Justin Nishioka, p.80, lines 11-12).
2. "You can see here. She's stomping, stomping my body." (*Id.*, p.82, lines 22-23).
3. "Well, you can see I'm in pain here." (*Id.*, p.85, line 5).
4. "If you play it again, yeah, I seen my – I thought I just saw my left leg moving, yeah." (*Id.*, p. 85, lines 12-13).
5. Q. "All right. So we're back on the record, and Ms. Adams has requested to go back to the video concerning the sally port which we had marked as Exhibit 2. And where would you like to go back to?"
   A. "Let's go back to Eakin right when she was walking toward me after Officer— after I tried to get into the car." (*Id.*, p. 99, lines 6-12).
6. "You can play and see how she gets more and more into it." (*Id.*, p. 102, lines 7-8).
7. "I don't remember because his back is turned in the video and I don't know how far- how far he went, but this part was visible in the video." (*Id.*, p. 196, lines 20-22).

<u>Referring to the Santa Rita Video</u>

8. "I think we should let the video tell so you can be exact and know who was in which position at that time in the time frame on the timeline." (*Id.*, p. 117, lines 17-20).

9. Q. "We're going to play a video here, and we'll have this marked as Exhibit Number 6. In the upper left corner it says 11/30/2013, 10:51:02. Can you describe where this is?"

   A. "Santa Rita Jail. Looks like the entrance, back entrance, booking area." (*Id.*, p. 181, lines 3-4). "I'm at the window." (*Id.*, p.181, line 10).

10. "I can only recall her doing exactly what she did in the video. . ." (*Id.*, p.197, lines 20-21).

11. "She touched the arm that's in the – whichever way I was facing, the arm that she twisted in the video." (*Id.*, p. 198, lines 9-10). "Wait. Which arm is it in the video? Let's identify the arm that she's [had] – can you back the video up and let's see which arm it is, and you tell me if it's left or right, and then we'll have a definite answer." (*Id.*, p. 200, lines 7-11).

12. "It's right there on video." (*Id.*, p. 200, line 22-23).

13. "I was assaulted two times so I can't pin the tail on the donkey and say this one did that. But the video is might helpful." (*Id.*, p. 204, lines 21-24).

14. Mr. Finley: "She said if you replayed the video she might be able to tell, but you don't want to do that. So she doesn't know." (*Id.*, p. 202, lines 5-7).

Never once does Ms. Adams challenge the authenticity of the videos during her deposition, or claim that the videos are inaccurate. Never once does Plaintiff's counsel, Steven Finley, object to the videos or the video contents as inaccurate. As a result, Plaintiff has waived her right to challenge the authenticity of the videos or their contents. Moreover, the Plaintiff herself has authenticated the videos as an accurate portrayal of the events giving rise to her Complaint.

Thus, we have authentication based on the appendant Declaration of Justin Nishioka, authentication based on Federal Rule §901(b), and authentication based on Ms. Adams' deposition testimony. The video evidence, and the videos refutation of the allegations presented in Plaintiff's Complaint, should be considered by this Court in its assessment of the City's Motion for Summary Judgment.

### III. Ms. Adams' Perception of Events Not Consistent With Video Evidence

In her deposition, Plaintiff confidently pointed out where in the video the Defendant officers' allegedly used excessive force. Yet, somehow Ms. Adams' perception of the events, even when viewing the event on video, appears to ignore the fact that the videos directly refute her allegations. We see this in Plaintiff's Opposition. Ms. Adams' is apparently blinded by her version of the events as she remembers them, and cannot view the events on the video as they took place in reality. Nonetheless, Ms. Adams' testimony identifies the exact times in the videos when the alleged misconduct occurred. This court can reference the videos at the specific time signatures identified by Ms. Adams' to assess whether the video evidence provides conclusive facts contradicting Ms. Adams' allegations. Indeed, the videos do contradict Ms. Adams' allegations. The videos show us that Ms. Adams is not telling the truth. Let's go through each material issue that the Plaintiff claims to be under dispute and review it concurrently with the video evidence capturing the event.

<u>Alleged Sally Port Hair Pull</u>

Ms. Adams believes that her hair was pulled at 7:10:13 in the sally port video. (*See* Adams Transcript, p. 59, lines 11- 25). CSO Eakin's hand is on Ms. Adams' shoulder and at no point does she pull Ms. Adams' hair, as seen in the video.

It is also important to note that the Plaintiff wants to make an issue about whether Ms. Adams "requested" to go to the ground or whether Ms. Adams was told by officers to go to the ground. This issue is not material. Moreover, this is not the misconduct which the Plaintiff is alleging. The Plaintiff's Complaint states that Ms. Adams' was pulled by her hair, and implies that she was pulled out of the car by her hair and onto the ground. In Plaintiff's deposition, this allegation is further clarified. Ms. Adams specifically states that she was pulled out of the car by her hair and onto the ground. (Adams Transcript, p. 54-55, line 3). Thus, the issue before the court, which is material to this case, is whether or not Ms. Adams' hair was pulled, not why she ultimately went down to the ground. Regardless, either way you spin it, whether requested or not, evidence shows that Ms. Adams has fabricated this claim. There is no evidence as to any misconduct as to Ms. Adams going to the ground in the sally port. Since the video shows that

officers did not pull Ms. Adams out of the car by her hair and onto the ground, no reasonable jury can find this to be an issue of dispute and rule in favor of the Plaintiff.

### Alleged Sally Port Kick

Ms. Adams believes that she was kicked at 7:10:36 in the sally port video. The video shows CSO Eakin place her foot on Ms. Adams. (*Id.*, at p. 60). CSO Eakin did this in response to Ms. Adams' moving her legs and believing that Ms. Adams' would attempt to kick her. As quoted above, Ms. Adams admits that she moved her legs. She admits that her legs moved in the video stating, "If you play it again, yeah, I seen my – I thought I just saw my left leg moving, yeah." (Adams Transcript., p. 85, lines 12-13). Since Ms. Adams' leg moved, it is not "objectively unreasonable" for CSO Eakin to feel the need to protect herself from being kicked. Placing her foot on Ms. Adams' leg was appropriate in light of the circumstances.

### Alleged Sally Port Stomp on Back

Ms. Adams alleges that she was stomped on her back at 7:10:42 of the sally port video. (*Id.*, at p. 61-62, line 12). In the video we see that CSO Eakin's foot is on Ms. Adams' leg, not her back, and nothing indicates this was done for any reason other than to protect herself from possibly being kicked. As allowed by the *Nissen* decision, this court can make reasonable deductions based on the attitudes and demeanor of the parties present in the video. CSO Eakin reacts to Ms. Adams' leg movement, continues with caution as Ms. Adams' legs continue to flail, and then removes her foot once she had assessed that Ms. Adams did not pose a danger anymore. These actions are not objectively unreasonable.

### Alleged Sally Port Hand Grind Into Pavement

Ms. Adams claims her hand was ground into the pavement at 7:10:25 in the sally port video. (*Id.*, at p. 63-64, line 8). Ms. Adams' hands were cuffed behind her back and raised in the air. This is visible in the video. In the lower right-hand corner of the video, you see Ms. Adams' cuffed hands dipping in and out of the picture, making it a physical impossibility for Officer Nguyen to grind her hand into the floor. No medical records on the date of the incident indicate that there were any injuries to Ms. Adams' hands. Any such injuries would have been noted by medical personnel. No such injuries were noted. Ms. Adams' hand was not ground into the

floor, regardless of what Ms. Adams' might claim. The court is not required to check all concepts of science and logic at the door simply because the Plaintiff makes an unfounded allegation.

Santa Rita Take Down

Ms. Adams stated that a take down occurred sometime after 10:55:43 in the Santa Rita video. (*Id.*, at p. 187, lines 1-22). The City concedes that a take-down maneuver was performed by CSO Mills, an authorized take down based on Ms. Adams' resistance and refusal to go into her designated holding cell. CSO Mills actions were not objectively unreasonable based on the fact that Ms. Adams appears to be upset in the video, waiving and gesturing with her arms, repeatedly pointing with hostility at CSO Mills, and then resists CSO Mills for ten seconds when CSO Mills tries to grab Ms. Adams' hand for control. CSO Mills actions fall within the doctrine of qualified immunity since no clearly established law forbids her from gaining the compliance of an inmate who actively and physically resists going into a holding cell.

Nothing in the videos, no evidence whatsoever, indicate that CSO Colton performed any misconduct. CSO Colton is only seen helping Ms. Adams to her feet then escorting her to her holding cell. No objective evidence provides any support for Plaintiff's allegations.

Alleged Santa Rita Dragging

Ms. Adams admitted in her deposition that she was not dragged, which is supported by the videos. No reasonable jury could ever find otherwise. Thus, this allegation can be disregarded. (*Id.*, at p. 107, lines 17-21).

Alleged Throw Into Confinement Cell

Ms. Adams alleges that at 10:56:18 in the second Santa Rita video that she was thrown into her holding cell. (*Id.*, at p. 184, lines 11-17). The video shows the court irrefutably that Ms. Adams was not thrown. Her feet never leave the ground. Ms. Adams' instead was pushed because of her efforts to stop officers from placing her in the cell.

Based on the video evidence, the Court has a clear concept of the facts and actions of all parties, and therefore must grant the City's Motion since the City's actions cannot be viewed to be objectively unreasonable, and no reasonable jury could find for the Plaintiff.

Terri Adams v. City of Hayward, et al.     Reply to Opposition to Motion for Summary Judgment
USDC Case No. C 14-5482 (KAW)              -8-

## IV. Supplement to Motion for Summary Judgment

Plaintiff has argued that the City's "late filed" Supplement to its Motion for Summary Judgment "should be disregarded". (Plaintiff's Opposition, Docket No. 61, p. 13, lines 14-15). Plaintiff has suffered no prejudice. The Supplement was provided just a few days after the filing of the City's Motion. Plaintiff had not yet conducted any depositions of any of the City officers at this point, and filed Plaintiff's Opposition eight days after the City filed its Supplement, giving Plaintiff ample time to consider the arguments therein. Effectively, the Plaintiff is conceding all the arguments set forth in the City's Supplement. The Court should consider the City's Supplemental Brief in its consideration of the City's Motion for Summary Judgment.

## CONCLUSION

There is no clear, objective evidence presented by Plaintiff that suggests that the defendant officers acted objectively unreasonably, or that it would have be clear to a reasonable officer that the officer's conduct in either the sally port or at Santa Rita was clearly unlawful.

There is no clear, objective evidence presented by Plaintiff that the actions of the defendant officers were plainly incompetent or that they knowingly violated the law. Nothing presented by Plaintiff in Plaintiff's Opposition sets forth a policy of inadequate supervision.

Quite to the contrary, we have officers performing their jobs and acting in good faith to maintain order, protect themselves, and ensure institutional security. As stated before, thankfully we have videos capturing these events. Thankfully we can see through Ms. Adams' false allegations and watch the defendant officers' act in accordance with the law. Nothing is left to the imagination. The truth could not be clearer. There was no deprivation of Plaintiff's rights. And thus, it can only be found that no reasonable jury could ever find for the Plaintiff.

Consequently, Plaintiff's § 1983 claims fail, bringing down all the pendant State law claims.

For the aforementioned reasons and the arguments presented in the City's Motion and Supplemental Brief, and based on the video evidence provided, the City respectfully requests that the Court grant its Motion for Summary Judgment.

DATED: September 17, 2015

Respectfully submitted,

MICHAEL S. LAWSON, City Attorney

By: _____
Justin Nishioka, Deputy City Attorney
Attorneys for Defendants

Terri Adams v. City of Hayward, et al.
USDC Case No. C 14-5482 (KAW)

Reply to Opposition to Motion for Summary Judgment

-10-