UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI ADAMS,<br>   Plaintiff,<br>  v.<br>CITY OF HAYWARD, et al.,<br>   Defendants. | Case No. 14-cv-05482-KAW<br><br>**ORDER FOLLOWING PRETRIAL CONFERENCE** |

  The Court held a pretrial conference in this case on January 24, 2017. This order memorializes the Court's rulings, issued from the bench, on motions in limine and other matters before the Court.

  **A. Motions in Limine**

    **i. Plaintiff's Motion in Limine No. 1 (Exclusion of Character Evidence)**

  Plaintiff moves to preclude Defendants from presenting improper character evidence. First, Plaintiff seeks the preclusion of "extrinsic evidence that [Plaintiff] has engaged in disruptive behavior that could be construed as criminal of sorts," used for the purpose of impeaching Plaintiff's character for truthfulness. (Dkt. No. 131 at 2.) Second, Plaintiff seeks to preclude alleged bad acts not related to truthfulness if such evidence is introduced for the purpose of impeaching Plaintiff's character. (*Id.* at 3.) Finally, Plaintiff seeks to preclude "irrelevant" evidence of Plaintiff's character, specifically her criminal history that includes arrests for shoplifting and simple assault, as well as a 2014 arrest where Plaintiff allegedly broke one of the windows of a neighbor's car with a frying pan and chased a minor. (*Id.* at 4.)

  Federal Rule of Evidence 608 prohibits the use of extrinsic evidence, other than a criminal conviction, "to prove specific instances of a witness's conduct in order to attack or support the

witness's character for truthfulness." *See also United States v. Bosley*, 615 F.2d 1274, 1276 (9th Cir. 1980) ("Fed.R.Evid. 608(b) provides that specific instances of conduct of a witness not resulting in a criminal conviction may not be proved by extrinsic evidence solely for the purpose of attacking the credibility of the witness"). While the Court may allow such instances to be inquired into on cross-examination, extrinsic evidence still may not be used to impeach the witness's character for truthfulness. *Id.* at 1276-77.

Here, Defendants do not oppose the preclusion of Plaintiff's criminal history prior to the November 30, 2013 incident, unless necessary for impeachment to any evidence presented by Plaintiff. (Dkt. No. 133 at 3.) The Court will therefore exclude evidence of Plaintiff's criminal history prior to November 30, 2013, unless Plaintiff opens the door to such evidence. "[T]he concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence." *United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999). The Ninth Circuit has held that such impeachment by contradiction is not governed by Rule 608, but by Rule 607, and that Rule 607 "allows the admission of extrinsic evidence to impeach specific errors or falsehoods in a witness's testimony on direct examination." *United States v. Antonakeas*, 225 F.3d 714, 724 (9th Cir. 2001); *see also Castillo*, 181 F.3d at 1132. In permitting such evidence, the Ninth Circuit explained:

> Direct-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral. This approach has been justified on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine.

*Castillo*, 181 F.3d at 1132-33 (internal quotation omitted).

With respect to incidents following November 30, 2013, it appears there are two events at issue: (1) a January 18, 2014 investigation into a broken window, in which Plaintiff's neighbor accused Plaintiff of breaking a window, and (2) a February 2, 2014 arrest where Plaintiff allegedly broke Plaintiff's neighbor's bedroom window and vehicle windshield with a frying pan, chased Plaintiff's neighbor's son while trying to hit him with the frying pan, and may have tried to jump

on a couch when the police arrived.[1] Defendants do not explain the relevance of the first incident, and agreed at the pre-trial conference that the related exhibit could be excluded. With respect to the second incident, Defendants argue that it disproves Plaintiff's claims that she suffered injuries as a result of the November 30, 2013 incident, as the second incident involved Plaintiff running and swinging heavy objects. (Dkt. No. 133 at 3.) Defendants further contend that such evidence is necessary in light of Plaintiff refusing to produce discovery going to her damages, thus preventing Defendants from having other evidence to counter her damages claims. (*Id.* at 3-4.)

The Court finds that the evidence of the February 2, 2014 arrest is relevant to Plaintiff's damages. Relevant evidence is any evidence that has any tendency to make a fact that is of consequence to determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Here, a significant issue is whether Plaintiff was actually damaged by Defendants on November 30, 2013. The February 2, 2014 arrest would contradict claims that Plaintiff was injured, as it involved Plaintiff committing actions that were likely not possible if she had suffered the extent of injuries she claims from November 30, 2013. The January 18, 2014 investigation, however, lacks relevance because it was based solely on the neighbor's accusation, and makes no apparent showing regarding Plaintiff's physical abilities.

The Court finds, however, that the relevance of this evidence is outweighed by the risk of unfair prejudice. The Court has discretion "to exclude relevant evidence if its probative value is substantially outweighed by danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, there is a significant risk of prejudice that the jury would use the arrest for purposes other than determining whether Plaintiff was injured on November 30, 2013, such as believing Plaintiff is not credible because she has bad or violent character. While this evidence is relevant to showing that Plaintiff was not injured on November 30, 2013, other evidence exists to show lack of injury, including the January 2, 2014 medical records that Defendants argued at the pre-trial

---

[1] According to the police report, Plaintiff either jumped onto a couch or the front door opening knocked her onto the couch. (Exh. 17 at 5.) Thus, it is not clear that Plaintiff did in fact jump onto a couch, as Defendants suggest in their papers. (*See* Dkt. No. 133 at 3.)

3

conference show that Plaintiff had no injuries, as well as Angela Casas's testimony that there were no injuries to Ms. Adams's hands. (*See* Dkt. No. 132 at 5.) Further, as discussed below, the Court is excluding the majority of Plaintiff's damages (including those related to medical expenses). Because the probative value is limited and outweighed by the risk of unfair prejudice, the Court will exclude evidence of the February 2, 2014 arrest.

Defendants also seek to present evidence that Plaintiff's "bipolar condition may have confused her perception of the events," through testimony by Dr. Stephen Raffle. (Dkt. No. 133 at 4.) Defendants intend to present evidence showing that Plaintiff was in a manic or depressed state in the time surrounding the November 30, 2013 incident. (*Id.*) At the pretrial conference, Defendants explained that such evidence includes their expert watching the video of Plaintiff and responding to a hypothetical about whether Plaintiff was in a manic or depressed state, as well as Plaintiff's own deposition testimony that she was depressed on November 30, 2013. Plaintiff objected to this evidence.

The Court finds that there is inadequate evidence that Plaintiff was in a manic or depressed state on November 30, 2013. First, it is not clear that an expert could make an accurate diagnosis of manic or depressed state by watching a video. While Defendants provided the Court with a copy of the American Academy of Psychiatry and the Law's Practice Guideline, the Court did not find any statement that an accurate diagnosis could be made simply by watching a video.[2] At most, the Practice Guideline notes that *collateral* information for an expert review may include written records and recordings, but focuses primarily on interviews conducted with the subject. Second, even if an expert could make an accurate diagnosis by watching a video, it is not clear that this applies to the *instant* case, particularly when Defendants stated at the pretrial conference that Dr. Raffle has not yet viewed the relevant videos. Thus, there is no showing that Dr. Raffle could in fact make any diagnosis by watching video of Plaintiff in this case, let alone a credible one. Indeed, it is unclear how defense counsel could proffer that the expert will find that Plaintiff was

---

[2] The Court notes that Defendants only provided this 50-page report at the pretrial conference, and could not provide a specific pincite. It is not the Court's role to review extended exhibits to determine which portions the parties rely on. Nevertheless, the Court reviewed Section 5 referenced by defense counsel at the pretrial conference.

4

in a depressive state at the time of the incident when no such opinion from the expert has been provided. Finally, as to Plaintiff's deposition testimony that she was depressed, Plaintiff is not a medical expert and it is not clear that her statement that she was "depressed" would mean she was having a major depressive episode. Thus, even if Dr. Raffle could generally testify as to symptoms that can be attributed to a person diagnosed as bipolar and who is in a manic or depressed state, his testimony has no relevance to the instant case where Defendants cannot provide credible, reliable evidence that Plaintiff was in a manic or major depressive episode. Further, assuming such testimony and evidence was relevant, it is outweighed by the significant prejudicial risk that a jury may believe Plaintiff is not credible simply because of her bipolar disorder. Given the minimal relevance and significant prejudicial risk, the Court will exclude evidence that Plaintiff's bipolar condition may have confused her perception of the events, including the testimony of Dr. Raffle.

The Court therefore GRANTS Plaintiff's motion to exclude extrinsic evidence of Plaintiff's criminal acts prior to November 30, 2013 (unless Plaintiff opens the door to such evidence), the January 18, 2014 incident, the February 1, 2014 arrest, and evidence that Plaintiff's bipolar condition may have confused her perception of the events.

### ii. Defendants' Motion in Limine No. 1 (Exclude Opinion Testimony by Plaintiff)

Defendants move to exclude Plaintiff from offering a lay opinion on issues of law, including whether Defendants lacked a legal justification to use force against her and whether Defendant Mills's take-down of Plaintiff constitutes "excessive force" or was "objectively unreasonable." (Dkt. No. 121 at 1-2.)

The Court GRANTS Defendants' motion. As an initial matter, Plaintiff did not file an opposition and is therefore deemed to consent to the granting of this motion. (Judge Westmore's Standing Order ¶ 22 ("The failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion").) Further, the issues of legal justification and excessive force "are factual determinations properly within the jury's province." *Seals v. Mitchell*, No. CV 04-3764 NJV, 2011 WL 1399245, at *13

(N.D. Cal. Apr. 13, 2011). Thus, while Plaintiff may testify about what happened to her, she may not offer an opinion as to whether Defendants lacked a legal justification or if their actions constituted excessive force.

### iii. Defendants' Motion in Limine No. 2 (Exclude Evidence of Prior Complaints and Lawsuits)

Defendants move to exclude evidence of complaints, allegations of misconduct, investigations into alleged misconduct, and civil lawsuits involving Defendants and the City of Hayward. (Dkt. No. 121 at 5.)

The Court GRANTS Defendants' motion. Again, Plaintiff did not file an opposition and is therefore deemed to consent to the granting of this motion. Further, to the extent that a complaint is introduced for the truth of the matter contained therein, a hearsay issue will likely arise.

### iv. Defendants' Motion in Limine No. 3 (Bifurcation of Trial)

Defendants move to bifurcate the trial into two stages: (1) officer liability, and (2) damages. (Dkt. No. 121 at 8.) Defendants contend that bifurcation will further judicial economy because to establish damages, Plaintiff will need to call many witnesses, including family members and a possible economist. (*Id.* at 10.) Defendants also contend that bifurcation will improve presentation of evidence in the event Plaintiff presents economic testimony. (*Id.* at 11.)

The Court DENIES Defendants' motion. Although Plaintiff did not oppose the motion, the Court finds that judicial economy will not be served by bifurcation. Specifically, Defendants' concern about Plaintiff calling many witnesses to support her damages claim is negated by the fact that Plaintiff apparently intends to call only one witness: herself. (*See* Dkt. No. 128 at 3.) As discussed below and at the pretrial conference, this requires the exclusion of almost all of Plaintiff's alleged damages. Additionally, Plaintiff will not be permitted to call any witnesses other than those listed in the parties' joint pre-trial statement, which did not include any of the witnesses that Defendants are concerned about. (*See* Dkt. No. 132 at 4-6; Dkt. No. 99 at 6 ("No party shall be permitted to call any witness or offer any exhibit in its case in chief that is not disclosed in its pretrial statement . . . .").)

### v. Defendants' Motion in Limine No. 4 (Exclusion of Witnesses and Evidence Not Disclosed to Defendants)

6

Defendants move to exclude witnesses and evidence not disclosed or otherwise made known to Defendants. (Dkt. No. 121 at 11-12.)

The Court GRANTS Defendants' motion. First, Plaintiff did not oppose the motion, and is therefore deemed to consent to the granting of the motion. Second, Rule 26(a) requires that a party provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information," as well as "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ." "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (internal quotation omitted). "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Id.* "In determining whether this sanction should be imposed, the burden is on the party facing the sanction . . . to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless." *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008). As Plaintiff has failed to explain why her failure to comply with Rule 26(a) is substantially justified or harmless, exclusion of witnesses and evidence not properly disclosed is warranted.

### vi. Defendants' Motion in Limine No. 5 (Exclusion of Evidence of Past Instances of Police Misconduct)

Defendants move to exclude evidence or references to prior instances of police brutality, such as the Rodney King case, as well as to the Black Lives Matter movement. (Dkt. No. 121 at 14.)

The Court GRANTS Defendants' motion. Again, Plaintiff did not oppose the motion, and is therefore deemed to consent to the granting of the motion. Further, there is no showing that any such evidence or references would be relevant to the instant case, whereas there is potential undue prejudice if a jury finds against Defendants based on actions wholly unrelated to the November 30, 2013 event.

7

### vii. Defendants' Motion in Limine No. 6 (Exclusion of Evidence Concerning Loss of Income or Economic Opportunity)

Defendants move to exclude evidence of Plaintiffs' alleged loss of income or economic opportunity. (Dkt. No. 121 at 16.) Defendants argue that such evidence will be speculative, and that Plaintiff has also withheld documentation of the economic losses she suffered.

The Court GRANTS Defendants' motion. Plaintiff did not oppose the motion, and is therefore deemed to consent to the granting of the motion. Additionally, Plaintiff's failure to produce such evidence is grounds for exclusion.

### viii. Defendants' Motion in Limine No. 7 (Terminating Sanctions)

Defendants move for terminating sanctions for Plaintiff's failure to produce documents, including color photos of her injury and documents relating to loss of income and wages. (Dkt. No. 121 at 18.) Plaintiff also failed to produce documents relating to a domestic dispute that occurred shortly after November 30, 2013, which Defendants believe may have been the cause of her thumb injury. (*Id.* at 19.)

Although Plaintiff did not file an opposition to Defendants' motion, the Court DENIES Defendants' motion for terminating sanctions. Defendants rely on Federal Rule of Civil Procedure 37(e), which concerns the failure to preserve electronically stored information. It is not clear, however, that all of the evidence sought was in fact electronically stored information. Further, Rule 37(e) applies only if a party failed to take reasonable steps to **preserve** the electronically stored information; here, Defendants make no showing that Plaintiff failed to preserve the evidence, rather than simply refusing to hand over the evidence. *See Ortiz v. Kelly*, 404 Fed. Appx. 140, 141 (9th Cir. 2010) (finding that the district court did not abuse its discretion by refusing to draw a negative inference and impose sanctions for alleged spoliation of evidence where no showing of spoliation was made); *see also* Dkt. No. 121 at 18-19.

More importantly, Rule 37(e) only permits that upon a finding of prejudice, the Court "may order measures *no greater than necessary to cure the problem*." (Emphasis added). Defendants, however, do not explain why terminating sanctions are necessary to cure the problem. This is particularly the case where the Court has already excluded Plaintiff's documents relating to loss of income and wages for failure to produce the documents.

1  While the Court agrees that some sanctions may have been appropriate, in light of
2  Plaintiff's repeated failure to provide photographs of her thumb injury, Defendants cite no
3  authority for the Court to do impose such sanctions now.³  Rule 37(b)(2) does not apply as
4  Defendants never sought a Court order requiring the production of documents, and the Court has
5  found no record that it ever ordered such.⁴  As discussed above, Rule 37(e) does not apply because
6  while the photographs sought are electronic, there is no showing by Defendants that the
7  photographs have been destroyed or lost.  At best, the Court can and will exclude any evidence
8  that was not disclosed in the pretrial statement, including the photographs of Plaintiff's thumb
9  injury.  Again, Defendants will have Ms. Casas's testimony regarding the lack of injury to
10 Plaintiff's thumb.

### B. Evidentiary Rulings

#### i. Damages

In its January 20, 2017 tentative rulings, the Court ordered Plaintiff to be prepared to explain why the damages listed by Plaintiff were recoverable, what evidence Plaintiff had that such damages resulted from the events at issue in this suit, and what evidence Plaintiff had in support of the amounts sought. (Dkt. No. 134 at 3.)  With respect to the medical expenses, Plaintiff admitted at the hearing that she had no evidence beyond her own testimony to show causation.⁵  Plaintiff, however, is not permitted to testify to causation, as she is not a doctor or medical expert.  *See Martinez v. Allison*, 1:11-cv-1749-RRB, 2015 U.S. Dist. LEXIS 54887, at *4-

---

³ Defendants filed a "Supplemental Brief" following the pre-trial conference. (Dkt. No. 137.) Defendants did not seek leave to file this brief, and it is stricken. Moreover, the brief does not change the Court's analysis, and to the extent they suggest that Plaintiff admitted on the record at the pre-trial conference to spoliation of the photos, the Court disagrees; at most, Plaintiff stated the photos were in the cloud.

⁴ The Court observes that Defendants could have filed a joint discovery letter on this issue, pursuant to the Court's standing order.  Defendants state that they sought production of the documents in May 2015, and had requested the documents from Plaintiff in May 2016.  (Dkt. No. 121 at 19.)  Defendants then apparently failed to seek the documents until January 5, 2017, long after non-expert discovery closed.  (*Id.*)  Defendants provide no explanation for why they did not file a joint discovery letter.

⁵ Additionally, Plaintiff appears to have not provided documentation of many of her expenses to Defendants.

9

1    5 (finding that the plaintiff could testify as to the injuries he contended he suffered as a result of
2    the defendant's alleged conduct, but that as a lay person he could not testify to the causation of his
3    injuries). Because Plaintiff cannot show causation, Plaintiff may not seek to recover any of her
4    medical expenses, and may not present such damages at trial.

As to the August 2015 transportation expenses and relocation costs, Plaintiff explained at the hearing that these expenses arose from events that occurred after the November 30, 2013 events at issue in this case, *i.e.*, subsequent actions allegedly taken by the City of Hayward. Because they are not a part of this lawsuit, Plaintiff cannot recover such expenses in this case. Accordingly, Plaintiff may not present such damages at trial.

Finally, as discussed above, Plaintiff may not seek to recover loss of income because Plaintiff failed to produce documentation of her economic losses to Defendants. Thus, any evidence of loss of income is excluded.

### ii.    Exhibits

The Court finds that the following exhibits shall be excluded:

#### a.    Exhibit 1: December 16, 2014 Complaint

Defendants argued that they want to use the original complaint for the purposes of credibility, to show that Plaintiff repeatedly claimed a version of events that Defendants contend did not occur. As discussed above, Defendants already have evidence to challenge Plaintiff's version of the story. The Court will exclude the complaint for this purpose; because this complaint is not the operative complaint, and Defendants' use of it is cumulative. The Court will not allow different versions of the complaint to make Defendants' case generally. The Court observes Defendants could use Plaintiffs' deposition testimony or the operative complaint for impeachment purposes.

#### b.    Exhibit 2: December 16, 2014 Civil Cover Sheet

Defendants admit inclusion of this exhibit was a mistake. Accordingly, the Court excludes this exhibit.

#### c.    Exhibit 3: May 20, 2014 Second Chance Anger Management Classes Log

Defendants argued that the exhibit should be included because it shows Plaintiff's income

1 was about $5,000-$8,000, and that she therefore may have brought the instant lawsuit due to her
2 low income. Plaintiffs object that the exhibit is prejudicial because it shows Plaintiff attending an
3 anger management class. The Court finds that the exhibit does not show Plaintiff's intent in
4 bringing the lawsuit, and has little (if any) probative value. By contrast, the prejudicial effect is
5 significant in making a jury believe Plaintiff has bad character by attending an anger management
6 class. Accordingly, the Court excludes this exhibit.

          d.   Exhibits 17, 19, 20, 21, 22: February 1, 2014 Arrest

As discussed with respect to Plaintiff's motion in limine, the Court finds that the February 1, 2014 arrest's probative value of showing that Plaintiff was not injured is significantly outweighed by the risk of prejudice by making Plaintiff appear to have bad character. Accordingly, the Court excludes these exhibits.

          e.   Exhibit 18: January 18, 2014 Police Summary Report

Defendants withdraw this exhibit, as no one witnessed the complained of events. Accordingly, the Court excludes this exhibit.

### iii. Discovery and Deposition Designations

The Court reiterates that Defendants should limit the deposition designations to what will be relevant to this case, and to have the deposition properly indexed so as to save time during trial.

## C. Juror Questionnaire

At the pretrial conference, the parties agreed to allow the Court to use its typical juror questionnaire.

IT IS SO ORDERED.

Dated: January 27, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge